# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **MICHAEL ROBINSON #506881,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:23-cv-00746 |
| v. ) | |
| ) | JUDGE CAMPBELL |
| **DAVID HINNINGER, et al.,** ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiff Michael Robinson, an inmate at Whiteville Correctional Facility (WCFA) in the Western District of Tennessee, filed a pro se civil rights complaint under 42 U.S.C. § 1983 regarding his medical care at WCFA. Plaintiff also paid the filing fee. The Complaint is before the Court for initial review, as required by the Prison Litigation Reform Act. And as explained below, Plaintiff fails to state a claim against the Defendants that make venue technically proper in this judicial district. Those Defendants will be **DISMISSED**, and this case will be **TRANSFERRED** to the Western District. The Court expresses no opinion on the substance of Plaintiff's claims against the remaining Defendants.

## I. INITIAL REVIEW

The Court must review the Complaint and dismiss any part that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; *see also* 42 U.S.C. § 1997e(c). The Court must also hold this pro se pleading to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

**A. Allegations**

The Complaint names twelve Defendants: David Hinninger, the CoreCivic CEO; "'All' Board of Trustee's/'All' Members" of CoreCivic; Steve Conroy, the CoreCivic Vice President; Vinnie Vantell, the Warden of Trousdale Turner Correctional Center (TTCC); Chance Leeds, the WCFA Warden; Lee Dodson, the Assistant Commissioner of the Tennessee Department of Corrections (TDOC); Tasma Robertson, a nurse practitioner (NP) at WCFA; the unnamed insurance provider for NP Robertson; and four unnamed correctional officers at WCFA (Johnny Doe 1, Johnny Doe 2, Janice Doe 1, and Janice Doe 2). (Doc. No. 1 at 1–5, 11–13). Liberally construing the Complaint in Plaintiff's favor, he alleges as follows.

Plaintiff is a chronic care patient. (*Id.* at 15). On June 22, 2021, he went to medical because he was "passing severe amounts of blood in his stools." (*Id.* at 13). NP Robertson told a nurse to get a stool sample from Plaintiff for testing. (*Id.* at 14). The nurse gave Plaintiff a stool test kit, explained how to use it, and told Plaintiff to return the kit to her as soon as he could. (*Id.*). Plaintiff went to his cell, used the test kit, and immediately returned it to the nurse. (*Id.* at 14–15). The nurse told Plaintiff the test would be sent to the lab. (*Id.* at 15). A month later, Plaintiff asked medical if they had received the results, and the answer he received was "not yet." (*Id.*). Plaintiff kept asking for the results nearly every week, and medical kept saying there were no results back yet. (*Id.*).

On December 13, 2021, Plaintiff had a telehealth visit with a doctor. (*Id.*). Plaintiff asked if the results from his stool test were in his file/chart, and the doctor said no. (*Id.* at 16). The doctor said she would schedule Plaintiff for a colonoscopy. (*Id.*).

On March 7, 2022, after submitting a sick call, Plaintiff went to medical to ask about the colonoscopy. (*Id.*). A nurse told Plaintiff that there was no order for a colonoscopy in his file/chart and that "medical would take care of it." (*Id.*).

On May 9, 2022, after submitting another sick call, Plaintiff returned to medical, reported that the bleeding had gotten worse, and requested the ordered colonoscopy. (*Id.* at 17). A nurse told Plaintiff she would let NP Robertson know about his condition and request. (*Id.*).

On July 25, 2022, Plaintiff was taken for a colonoscopy at Jackson General Hospital. (*Id.*). Afterward, a doctor told Plaintiff that he found a large, cancerous mass in Plaintiff's colon that appeared to have been "growing for a while." (*Id.* at 18). The doctor would not let Plaintiff return to prison until he had a CAT scan to see if the "cancer had spread to any vital organs." (*Id.*).

On July 29, 2022, Plaintiff filed a grievance against NP Robertson and WCFA medical staff regarding the delay in getting Plaintiff a colonoscopy. (*Id.* at 19). Plaintiff received a response on August 23, 2022, reflecting that the grievance committee deemed his grievance "inappropriate per TDOC/WCFA policy 501.01" because it was not "filed within (7) seven calendar days of the occurrence giving rise to the grievance." (*Id.*; Doc. No. 1-3). However, a written explanation by a member of the medical staff also reflected that the colonoscopy ordered by the telehealth doctor on December 13, 2021, was approved on December 17, 2021, but NP Robertson did not set it up or take any action to treat Plaintiff at that time. (Doc. No. 1 at 19; Doc. No. 1-2 ("Per documentation noted in medical record, I am unable to determine events that lead to delay in scheduling.")). Plaintiff appealed this grievance response to WCFA Warden Leeds, and Leeds concurred with the grievance committee. (Doc. No. 1 at 22; Doc. No. 1-3). Plaintiff appealed that response, and on October 6, 2022, TDOC Assistant Commissioner Dodson concurred with Warden Leeds. (Doc. No. 1 at 25; Doc. No. 1-4).

On August 22, 2022, Plaintiff was taken to West Cancer Center in Memphis, where a doctor ordered an MRI for Plaintiff, ordered Plaintiff to meet with a "radiation doctor," and told Plaintiff

he would set up a treatment plan for Plaintiff after the meeting with the radiation doctor. (Doc. No. 1 at 25–26). The doctor scheduled a follow-up appointment for four weeks later. (*Id.*)

On August 30, 2022, NP Robertson called Plaintiff to medical and asked if a treatment plan had been established yet. (*Id.* at 26). Plaintiff asked about the MRI ordered on August 22, 2022, and NP Robertson said "nothing was scheduled yet." (*Id.*).

Around 7:10 a.m. on September 19, 2022, four unnamed WCFA correctional officers (Johnny Doe 1, Johnny Doe 2, Janice Doe 1, and Janice Doe 2 ("Doe Defendants")) told Plaintiff that he had an appointment at West Cancer Center at 9:00 a.m. (*Id.* at 27). The Doe Defendants left WCFA in an unair-conditioned van with Plaintiff and another inmate at 9:10 a.m. (*Id.* at 27–28). The Doe Defendants stopped to get gas on the way to West Cancer Center (*id.* at 32–33; Doc. No. 1-1 at 4), and Plaintiff arrived two hours late for his appointment. (Doc. No. 1 at 28–29). Medical staff at West Cancer Center told Plaintiff that his "very important" appointment had been rescheduled for October 17, 2022. (Doc. No. 1 at 29). On the way back to WCFA, the Doe Defendants stopped in the parking lot of a fast food restaurant for approximately forty-five minutes, forcing Plaintiff and the other inmate to smell very appetizing food they were not allowed to eat while sitting in chains in the unair-conditioned van. (*Id.* at 30–31).

During the first week of October 2022, Plaintiff went to medical for a yearly physical. (*Id.* at 34). NP Robertson angrily told Plaintiff that he "could just keep filing grievances on her [and] that she does not have anything to do with scheduling his treatments nor anything to do with his cancer treatments in general." (*Id.* at 34–35). Plaintiff believes that NP Robertson's tone of voice showed she was being purposefully negligent towards Plaintiff's medical needs in retaliation for filing grievances. (*Id.* at 35). Plaintiff alleges that he and NP Robertson "do not like each other at all" and that Robertson "has something smart to say" every time Plaintiff has a medical visit. (*Id.*).

4

On October 17, 2022, Plaintiff was taken back to West Cancer Center, and the doctor expressed disappointment that Plaintiff had not received the MRI or met with the radiation doctor, as ordered on August 22, 2022. (*Id.* at 36). Plaintiff told the doctor that NP Robertson was blaming these circumstances on the doctor. (*Id.* at 36–37). The doctor responded that his staff had repeatedly attempted to get in touch with WCFA staff to set up the ordered MRI since August 2022, but WCFA staff would not answer or return the calls. (*Id.* at 37). The doctor reiterated that Plaintiff needed an MRI and a meeting with a radiation doctor before his treatments could start. (*Id.* at 37–38). The doctor told Plaintiff he would send a letter to NP Robertson. (*Id.* at 38).

The week after Plaintiff's appointment on October 17, 2022, Plaintiff met with a radiation doctor. (*Id.*). And on November 4, 2022, Plaintiff got an MRI. (*Id.* at 39). As of November 8, 2022, however, Plaintiff had still not received any cancer treatment. (*Id.*). All the while, Plaintiff's "cancer just kept growing bigger and bigger causing more and more pain." (*Id.* at 39–40).

**B. Legal Standard**

To conduct the required initial review, the Court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)).

**C. Analysis**

Plaintiff brings this case under 42 U.S.C. § 1983, which permits individuals to bring civil claims based on violations of "the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). Plaintiff sues all twelve

Defendants in their individual and official capacities. (Doc. No. 1 at 1–4). "[A]n individual-capacity claim seeks to hold an official personally liable for the wrong alleged," while "[a]n official-capacity claim against a person is essentially a claim against the" entity the person represents. *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (citing *Essex v. Cnty. of Livingston*, 518 F. App'x 351, 354 (6th Cir. 2013)).

      1. <u>Dismissal of Defendants Residing within the Middle District of Tennessee</u>

Of the twelve Defendants in this case, five are alleged to reside within the Middle District of Tennessee ("MDTN Defendants"): CoreCivic CEO Hinninger; CoreCivic Vice President Conroy; a Defendant apparently intended to be a stand-in for all members of CoreCivic's "Board of Trustees"; TTCC Warden Vantell; and TDOC Assistant Commissioner Dodson. (Doc. No. 1 at 1–2, 11–12). Plaintiff plainly fails to state a claim against the MDTN Defendants.

      A. <u>Individual-Capacity Claims</u>

Three MDTN Defendants are CoreCivic executives with no personal involvement in the allegations giving rise to this case (Hinninger, Conroy, and the "Board of Trustees"). Plaintiff makes a conclusory assertion that these Defendants should be liable for the alleged wrongdoing of CoreCivic employees. (Doc. No. 1 at 41–44). But this theory of liability—called the doctrine of "respondeat superior"—"does not apply in § 1983 lawsuits to impute liability onto supervisory personnel." *Farmer v. Phillips*, No. 20-5730, 2021 WL 6210609, at *2 (6th Cir. Oct. 19, 2021) (citing *Polk County v. Dodson*, 454 U.S. 312, 325 (1981)). To state a claim against these CoreCivic executives, therefore, Plaintiff must allege that they "were somehow personally involved in the unconstitutional activity of a subordinate, or at least acquiesced in the alleged unconstitutional activity of a subordinate." *Id.* (citations omitted). Because Plaintiff makes no such allegations, he fails to state a claim against these three Defendants.

Plaintiff asserts that TDOC Assistant Commissioner Dodson should be held liable for the same reasons as the CoreCivic executives (Doc. No. 1 at 44), but again, Plaintiff has not alleged the necessary level of personal involvement. As alleged, the extent of Dodson's involvement in this case is concurring with the denial of administrative grievances. But "[t]he 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). So Plaintiff fails to state a claim against Dodson.

Finally, after naming TTCC Warden Vantell as a Defendant in the caption of the Complaint, Plaintiff does not mention him again. Indeed, no part of the alleged events giving rise to this case even occurred at TTCC. So Plaintiff fails to state a claim against Vantell. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) ("Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983." (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978))).

### B. Official-Capacity Claims

As noted above, an official-capacity claim is equivalent to a claim against the entity that a person represents. *See Peatross*, 818 F.3d at 241. Four of the five MDTN Defendants represent CoreCivic (Hinninger, Conroy, the "Board of Trustees," and Vantell). (Doc. No. 1 at 1, 11). But the same is true of five other Defendants alleged to work at WCFA, where the acts or omissions giving rise to this case occurred (Warden Leeds and the four correctional officer Doe Defendants).[1] (*Id.* at 2–4, 11–13). So the official-capacity claims against the four MDTN Defendants representing CoreCivic may be properly dismissed as redundant. *See J.H. v. Williamson Cnty., Tenn.*, 951 F.3d 709, 723 n.4 (6th Cir. 2020) ("The district court correctly dismissed these official

---

[1] NP Robertson also allegedly works at WCFA but is employed by an unknown "contract vendor" identified as "John Doe Company Medical Provider." (Doc. No. 1 at 3).

7

capacity claims as superfluous of the claim against the county." (citing *Foster v. Michigan*, 573 F. App'x 377, 390 (6th Cir. 2014))). The Court expresses no opinion on the substance of Plaintiff's official-capacity claims against the remaining Defendants representing CoreCivic.

The fifth and final MDTN Defendant represents the TDOC (Dodson). "And as an arm of the state, the TDOC is absolutely immune from suit under the Eleventh Amendment." *Farmer*, 2021 WL 6210609, at *2 (citing *Alabama v. Pugh*, 438 U.S. 781, 782 (1978)). One exception to this immunity is if a "claim fits within the exception of *Ex parte Young*, 209 U.S. 123 (1908)," which "applies only when the plaintiff sues for 'prospective [injunctive] relief to end a continuing violation of federal law.'" *Morgan v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 63 F.4th 510, 515 (6th Cir. 2023) (quoting *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013)). But Plaintiff does not clearly allege such continuing violations or request such prospective injunctive relief. (*See* Doc. No. 1 at 45–48 (requesting a "no retaliation order" and monetary damages)). So Plaintiff fails to state an official-capacity claims against TDOC Assistant Commissioner Dotson.

2. Transfer to the Western District of Tennessee

Following the dismissal of the MDTN Defendants, seven Defendants will remain, including the six Defendants alleged to work at WCFA ("WCFA Defendants") and one unnamed insurance provider for a WCFA Defendant. The proper venue (or at least the more convenient venue for the parties and witnesses) for consideration of Plaintiff's claims against these Defendants is the Western District of Tennessee.

Under 28 U.S.C. § 1391(b), a civil action may be brought in a judicial district where: (1) any defendant resides, if all defendants reside in the same state; (2) a substantial part of the events or omissions giving rise to the case occurred; or (3) any defendant is subject to personal jurisdiction at the time the case is commenced, if there is no district in which the case may otherwise be

brought. Venue is no longer proper here under subsections (b)(1) and (b)(2) because the WCFA Defendants allegedly reside in the vicinity of WCFA (Doc. No. 1 at 2–5, 11–13) and the events giving rise to Plaintiff's claims occurred at WCFA (and perhaps en route to the West Cancer Center in Memphis). WCFA is in Hardeman County,[2] and Hardeman County is within the Western District of Tennessee. 28 U.S.C. § 123(c)(1). And because this case could have been brought in the Western District, subsection (b)(3) does not apply.

When a case is in an improper venue, the Court may transfer it "to any district or division in which it could have been brought" if it is "in the interest of justice" to do so. 28 U.S.C. § 1406(a); *see also* 28 U.S.C. § 1404(a). Accordingly, the Clerk will be directed to transfer this case to the Western District. *See Flynn v. Greg Anthony Constr. Co.*, 95 F. App'x 726, 738 (6th Cir. 2003) ("Congress has enacted a number of statutes that give federal courts the power to transfer cases sua sponte.")

## II. CONCLUSION

For these reasons, the MDTN Defendants (Hinninger, the "Board of Trustees," Conroy, Vantell, and Dodson) are **DISMISSED** as parties, and the Clerk is directed to **TRANSFER** this case to the United States District Court for the Western District of Tennessee, Eastern Division. 28 U.S.C. § 123(c)(1). This Court expresses no opinion on the substance of Plaintiff's claims against the remaining Defendants.

Plaintiff **MUST** send all future filings in this case to the Western District of Tennessee.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

---

[2]   *See* https://www.tn.gov/correction/state-prisons/state-prison-list/whiteville-correctional-facility.html (last visited Oct. 4, 2023).