## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:23-cv-01217-SHM-tmp |
| | ) | |
| DAVID HINNINGER, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

**ORDER GRANTING MOTION TO AMEND (ECF NO. 9); PARTIALLY DISMISSING AMENDED COMPLAINT (EFC NO. 1); PROCEEDING AMENDED COMPLAINT IN PART (ECF NO. 1); AND GRANTING PENDING MOTION REQUESTING APPROVAL OF SUBPOENA AND SUMMONS (ECF NO. 10)**

---

On July 25, 2023, Plaintiff Michael Robinson, Tennessee Department of Correction ("TDOC") prisoner number 506881, who is incarcerated at Whiteville Correctional Facility ("WCFA") in the Western District of Tennessee, filed a pro se civil rights complaint pursuant to 42 U.S.C. § 1983 based on his medical care at WCFA. (ECF No. 1.)  Plaintiff paid the filing fee. (ECF No. 5.)  On October 10, 2023, the Honorable William L. Campbell, Jr. of the Middle District of Tennessee issued a Memorandum and Order dismissing Defendants Hinninger, the "Board of Trustees," Conroy, Vantell, and Dodson and transferring the case to the proper venue, the Western District of Tennessee.  (ECF No. 6.)  On October 23, 2023, Robinson filed a Motion to Amend Complaint. (ECF No. 9.)  On November 1, 2023, Robinson filed a Motion Requesting Approval of Subpoena and Summons Service.  (ECF No. 10.)  (collectively, the "Pending Motions").

Robinson's original complaint is construed to allege claims of violation of TDOC policy, state law violations, inadequate grievance process, denial of medical care and conditions of

confinement.  (ECF No. 1 at PageID 8-9, 22-24, 27-34.)  Robinson sues the remaining seven (7) Defendants:  (1) WCFA Warden Chance Leeds[1]; (2) Tasma Robertson, nurse practitioner or doctor at WCFA; (3) unnamed insurance provider for Tasma Robertson; (4) Officer Johnny Doe 1 at WCFA; (5) Officer Johnny Doe 2 at WCFA; (6) Officer Janice Doe 1 at WCFA; and (7) Officer Janice Doe 2 at WCFA.  (ECF No. 1 at PageID 2-5.)  Robinson sues each defendant in that defendant's individual and official capacity.  (*Id*. at PageID 2-4.)

Robinson seeks:  (1) a no retaliation order; (2) $1,000,000.00 from each defendant in compensatory and actual damages; (3) $1,000,000.00 from each defendant in punitive damages; (4) treble damages from each defendant in an amount equal to three times the amount for which the defendant is found liable by the trier of fact; (5) a temporary cease and desist order and suspension of business license of Core Civic, LLC from conducting any business as a private prison in Tennessee for at least three years; (6) costs and attorney fees; (7) and for Robertson to be held criminally liable for attempted murder.  (ECF No. 1 at PageID 45-49.)

On October 23, 2023, Robinson filed a Motion to Amend Complaint.  (ECF. No. 9.)  Robinson seeks to dismiss all Defendants in his Complaint except Robertson and Robertson's unknown insurance provider.  (*Id*. at PageID 4.)  Robinson's Motion is GRANTED.  All Defendants except Robertson and Robertson's unknown insurance provider are DISMISSED WITHOUT PREJUDICE.

For the reasons explained below, Robinson's claim for denial or delay of medical care and medical malpractice against Robertson in her individual capacity SHALL PROCEED.  Robinson's

---

[1] Chance Leeds is the current WCFA Warden.  TN Department of Correction, Whiteville Correctional Facility (last accessed September 12, 2024).

claims against Robertson in her official capacity and against her unknown insurance provider are DISMISSED WITH PREJUDICE.

## I.   <u>BACKGROUND</u>

Robinson is a chronic care patient. (ECF No. 1 at PageID 15.) On June 22, 2021, he went to medical because he was "passing severe amounts of blood in his stools." (*Id*. at PageID 13.) Robertson told a nurse to get a stool sample from Robinson for testing. (*Id*. at PageID 14.) The nurse gave Robinson a stool test kit, explained how to use it, and told Robinson to return the kit to her as soon as he could. (*Id*.) Robinson went to his cell, used the test kit, and immediately returned it to the nurse. (*Id*. at PageID 15.) The nurse told Robinson the test would be sent to the lab. (Id.) A month later, Robinson asked medical if they had received the results, and the answer he received was "not yet." (*Id*.) Robinson asked for the results nearly every week, and medical kept saying there were no results yet. (*Id*.) On December 13, 2021, Robinson had a telehealth visit with a doctor. (*Id*.) Robinson asked if the results from his stool test were in his file/chart, and the doctor said no. (*Id*. at PageID 16.) The doctor said she would schedule Robinson for a colonoscopy. (*Id*.)

On March 7, 2022, after submitting a sick call, Robinson went to medical to ask about the colonoscopy. (*Id*.) A nurse told Robinson that there was no order for a colonoscopy in his file/chart and that "medical would take care of it." (*Id*.) On May 9, 2022, after submitting another sick call, Robinson returned to medical, reported that the bleeding had worsened, and requested the ordered colonoscopy. (*Id*. at PageID 17.) A nurse told Robinson she would let Robertson know about his condition and request. (*Id*.) On July 25, 2022, Robinson was taken for a colonoscopy at Jackson General Hospital. (*Id*. at PageID 17-18.) Afterward, a doctor told Robinson that the doctor had found a large, cancerous mass in Robinson's colon that appeared to

have been "growing for a while." (*Id*. at 18.)  The doctor would not let Robinson return to prison until he had a CAT scan "to see if the cancer had spread to any vital organs."  (*Id*.)

On July 29, 2022, Robinson filed a grievance against Robertson and WCFA medical staff aboubt the delay in getting Robinson a colonoscopy.  (*Id*. at PageID 19.)[2]  Robinson received a response on August 23, 2022, that the grievance committee deemed his grievance "inappropriate per TDOC/WCFA policy 501.01" because it was not "filed within (7) seven calendar days of the occurrence giving rise to the grievance."  (*Id*. at 19, 59-60.)  A written explanation by a member of the medical staff showed that the colonoscopy ordered by the telehealth doctor on December 13, 2021, was approved on December 17, 2021, but that Robertson did not set it up or take any action to treat Robinson at that time.  (*Id*.)  The grievance response states, "Per documentation noted in medical record, I am unable to determine events that [led] to delay in scheduling." (*Id*. at PageID 59.)  Robinson appealed this grievance response to WCFA Warden Leeds, and Leeds concurred with the grievance committee.  (*Id*. at Page ID 22, 60.)  Robinson alleges Leeds' concurrence with the grievance committee was an abuse of power and discretion and a violation of state perjury law.  (*Id.* at PageID 24.)  Robinson appealed that response, and on October 6, 2022, TDOC Assistant Commissioner Lee Dodson concurred with Warden Leeds.  (*Id*. at PageID 25, 61.)

On August 22, 2022, Robinson was taken to West Cancer Center in Memphis, where a doctor ordered an MRI, ordered Robinson to meet with a "[r]adiation [d]octor," and told Robinson the doctor would set up a treatment plan for Robinson after the meeting with the radiation doctor. (*Id*. at Page ID 25-26.)  The doctor scheduled a follow-up appointment four weeks later.  (*Id*.)  On

---

[2] Robinson refers to the grievance listed as Exhibit "B", consisting of two pages attached to his complaint, but there is no Exhibit "B" in the record.

August 30, 2022, Robertson called Robinson to medical and asked if a treatment plan had been established.  (*Id*. at PageID 26.)  Robinson asked about the MRI ordered on August 22, 2022, and Robertson said, "[n]othing was scheduled[,] yet."  (*Id*.)

Around 7:10 a.m. on September 19, 2022, four unnamed WCFA correctional officers (Johnny Doe 1, Johnny Doe 2, Janice Doe 1, and Janice Doe 2 (collectively, the "Doe Defendants")) told Robinson that he had an appointment at West Cancer Center at 9:00 a.m. (*Id*. at PageID 27.)  The Doe Defendants left WCFA in van without air conditioning with Robinson and another inmate at 9:10 a.m.  (*Id*. at PageID 27-28.)  The Doe Defendants stopped to get gas on the way to West Cancer Center.  (*Id*. at Page ID 32–33, 65.), and Robinson arrived two hours late for his appointment.  (*Id*. at Page ID 28-29, 65.)  Medical staff at West Cancer Center told Robinson that his "very important" appointment had been rescheduled for October 17, 2022.  (*Id*. at PageID 29.)  On the way back to WCFA, the Doe Defendants stopped in the parking lot of a fast-food restaurant for approximately forty-five minutes, forcing Robinson and the other inmate to smell food they were not allowed to eat while sitting in chains in the van without air conditioning. (*Id*. at PageID 30-31.)  Robinson filed a TDOC grievance with the prison regarding this incident and the grievance was deemed inappropriate under TDOC policy.  (*Id*. at PageID 62-66.)  Robinson appealed to Warden Leeds who agreed with the grievance committee.  (*Id*. at Page ID 66.)  Robinson appealed that response, and on October 31, 2022, TDOC Assistant Commissioner Dodson concurred with Warden Leeds.  (*Id*. at PageID 67.)

During the first week of October 2022, Robinson went to medical for a yearly physical. (*Id*. at PageID 34.)  Robertson angrily told Robinson that he, "could just keep filing grievances on her [and] that she does not have anything to do with scheduling his treatments nor anything to do with his cancer treatments in general."  (*Id*. at PageID 34-35.)  Robinson believes that Robertson's

tone of voice showed she was being purposefully negligent towards Robinson's medical needs in retaliation for his filing grievances.  (*Id*. at PageID 35.)  Robinson alleges he and Robertson, "do not like each other at all" and that Robertson, "has something smart to say," every time Robinson has a medical visit.  (*Id*.)

On October 17, 2022, Robinson was taken back to West Cancer Center, and the doctor expressed disappointment that Robinson had not received the MRI or met with the radiation doctor, as ordered on August 22, 2022.  (*Id*. at PageID 36.)  Robinson told the doctor that Robertson was blaming these circumstances on the doctor. (*Id*. at PageID 36-37.)  The doctor responded that his staff had repeatedly attempted to get in touch with WCFA staff to set up the ordered MRI since August 2022, but WCFA staff would not answer or return the calls.  (*Id*. at PageID 37.)  The doctor reiterated that Robinson needed an MRI and a meeting with a radiation doctor before his treatment could start.  (*Id*. at PageID 37-38.)  The doctor told Robinson he would send a letter to Robertson. (*Id*. at PageID 38.)  The week after Robinson's appointment on October 17, 2022, Robinson met with a radiation doctor.  (*Id*.)  On November 4, 2022, Robinson had an MRI.  (*Id*. at PageID 39.)  As of November 8, 2022, Robinson had not received any cancer treatment.  (*Id*.)  "The cancer just kept growing bigger and bigger causing more and more pain and suffering to [Robinson]." (*Id*. at PageID 39-40.)

## II.   SCREENING THE COMPLAINT

### A.  LEGAL STANDARD

The Court must screen prisoner complaints and dismiss any complaint, or any portion of it, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint states a claim on which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). Under those standards, the Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). The Court does not assume that conclusory allegations are true, because they are not "factual," and all legal conclusions in a complaint "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." It also requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3 (quoting Fed. R. Civ. P. 8(a)(2)).

Courts screening cases accord more deference to *pro se* complaints than to complaints drafted by lawyers. "*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating, "a court cannot 'create a claim in which [a Plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

## B.  REQUIREMENTS TO STATE A CLAIM UNDER § 1983

Robinson sues under 42 U.S.C. § 1983.  (ECF No. 1 at PageID 8-9, 27-34.)  To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States, and (2) that a defendant caused harm while acting under color of state law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

## III.   ANALYSIS

Robinson alleges claims of denial or delay in receiving medical care when he did not receive a colonoscopy until approximately seven months after it was ordered by a doctor; when he was two hours late for an appointment with his cancer doctor causing it to be rescheduled for a month; when it took three months for him to receive an MRI; and when it took two months for him to meet with a radiation doctor.

Robinson sues Robertson in Robertson's individual and official capacity. (ECF No. 1 at PageID 1–4.)  "[A]n individual capacity claim seeks to hold an official personally liable for the wrong alleged," while "[a]n official-capacity claim against a person is essentially a claim against the entity the person represents." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (citing *Essex v. Cnty. of Livingston*, 518 F. App'x 351, 354 (6th Cir. 2013)).

### A.  OFFICIAL CAPACITY CLAIMS

The official capacity claims in Robinson's amended complaint are treated as claims against Robertson's employer, an unnamed private company.  *See Jones v. Union Cty., Tennessee*, 296 F.3d 417, 421 (6th Cir. 2002) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)).  Robinson does not state a claim against the unnamed private company employing Robertson.

The unnamed private company may be held liable only if Robinson's injuries were sustained pursuant to an unconstitutional custom or policy.  *See Monell v. Dep't of Soc. Serv.*, 436

U.S. 658, 691-92 (1978).  "A § 1983 plaintiff may not sue purely private parties." *Brotherton v. Cleveland*, 173 F.3d 552, 567 (6th Cir. 1999).  "In order to be subject to suit under § 1983, [a] defendant's actions must be fairly attributable to the state." *Collyer v. Darling*, 98 F.3d 211, 231-32 (6th Cir. 1997).  To be considered to have acted "under color of state law," an individual: (1) must be a state or local government official or employee; (2) must have "acted together with or ... obtained significant aid from state officials" and done so to such a degree that [the individual's] actions may properly be characterized as "state action", *see Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) or (3) must exercise powers traditionally reserved to a state.  *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974).

Robinson's alleges facts from which the Court can plausibly infer that the unnamed private company employing Robertson is a state actor for purposes of § 1983.  The amended complaint alleges facts demonstrating that the unnamed private company functioned as an arm of the State of Tennessee, by operating within the prison and providing medical care to prisoners, *See* Pierce *v. Correct Care*, No. 3:17-CV-01322, 2018 WL 1948202, at *3 (M.D. Tenn. Apr. 25, 2018).

For the unnamed private company to be liable, Robinson must allege that there is a direct causal link between a policy or custom of the unnamed company employing Robertson and the alleged constitutional violation. *See Monell, 436 U.S. 658, 691 (1978)*.  Robertson's unnamed private company employer may be liable "if its official policies or customs resulted in injury to the plaintiff." *O'Brien v. Mich. Dep't of Corr.*, 592 Fed. Appx. 338, 341 (6th Cir. 2014); *see also Mason v. Doe*, No. 3:12CV–P794–H, 2013 WL 4500107, at *1 (W.D. Ky. Aug. 21, 2013) (collecting cases) ("a private corporation may be liable under § 1983 when an official policy or custom of the corporation causes the alleged deprivation of a federal right").

Robinson does not allege that he has been deprived of a right because of Robertson's employer's policy or custom and instead seeks relief based on his general allegations about Roberston's alleged negligent medical care.  Civil rights plaintiffs are not required to plead facts demonstrating municipal liability with particularity, *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993).  The amended complaint must be sufficient to put the municipality on notice of the plaintiff's theory of liability, *see, e.g.*, *Fowler v. Campbell*, No. 3:06CV-P610-H, 2007 WL 1035007, at *2 (W.D. Ky. Mar. 30, 2007). The allegations of Robinson's amended complaint fail to identify any official policy or custom of the unnamed private company that injured Robinson.

Robinson does not state a claim against Robertson in Robertson's official capacity. Robinson has failed to state a claim for relief pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 28 U.S.C. §§ 1915A(b)(1).  Any claims for damages against Robertson in her official capacity are DISMISSED WITH PREJUDICE.

**B. <u>UNKNOWN DEFENDANT</u>**

Robinson sues Robertson's unnamed insurance provider.  (ECF No. 1 at PageID 3-4.) Service of process cannot be made on an unknown or fictitious party.  The filing of a complaint against an unknown defendant does not toll the running of the statute of limitation against that party.  *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Bufalino v. Mich. Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968).

Robinson sues Robertson's unknown insurance provider in the caption of Robinson's complaint (ECF No. 1 at PageID 3), but Robinson does not mention the unknown insurance provider in the body of his complaint.  (See ECF No. 1.)  When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim for relief that is plausible on its

face." *Twombly*, 550 U.S. at 570.  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  Because Robinson fails to plead any action the unknown insurance provider took, or failed to take, that violated Robinson's rights, he does not state a claim against the unknown insurance provider.

Claims against the unnamed Defendants are DISMISSED WITH PREJUDICE for failure to state a claim to relief.

### C.  TDOC POLICY VIOLATIONS

Robinson alleges that Robertson failed to follow TDOC policy.  (ECF No. 1 at PageID 5, 19-20, 34-40.)  Even if Robertson failed to follow a TDOC policy, Robinson does not state a claim of constitutional magnitude.  An inmate's allegation that jail officials failed to follow a correctional facility's administrative policy does not by itself rise to the level of a constitutional violation.  *Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007).  After the Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995), mandatory language in prison regulations does not create a liberty interest protected by the Due Process Clause.  *See Rienholtz v. Campbell*, 64 F. Supp. 2d 721, 728–30 (W.D. Tenn. 1999), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (citing *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995)).

Section 1983 does not provide a remedy for violating state laws or regulations.  *Lewellen v. Metro. Gov't*, 34 F.3d 345, 347 (6th Cir. 1994); *see also Storm v. Swiger*, No. 4:07 CV 2387, 2007 WL 3171491, at *3 (N.D. Ohio Oct. 29, 2007) (finding a violation of a prison regulation is not actionable under § 1983) (citing *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995)).  Robinson does not have a constitutional right to have prison personnel follow the prison's policy.

Robinson's claims of violations of TDOC policy are DISMISSED WITH PREJUDICE for failure to state a claim to relief.

### D.  STATE LAW VIOLATIONS

Robinson alleges that Robertson is guilty of negligence.  (ECF No. 1 at PageID 35, 39.) Robinson's allegations are construed as claims of medical malpractice under Tennessee law.

Under 28 U.S.C. § 1367(a), "[i]f there is some basis for original jurisdiction, the default assumption is that the court will exercise supplemental jurisdiction over all related claims." *Veneklase v. Bridgewater Condos, L.C.*, 670 F.3d 705, 716 (6th Cir. 2012) (quoting *Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 892 (6th Cir. 1998)) (internal quotation marks omitted).  Section 1367 grants district courts broad discretion in exercising supplemental jurisdiction over related state law claims.  *See Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010).  Courts should "weigh several factors, including 'values of judicial economy, convenience, fairness, and comity.'"  *Id*. at 951–52 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)) (internal quotation marks omitted).

Robinson's claims for medical malpractice arise from the same facts as his federal claim against Robertson.  Because the Court is proceeding Robinson's claim of denial or delay of medical care against Robertson, the Court will exercise supplemental jurisdiction over Robinson's state law claims for medical malpractice.

### E.  MEDICAL CARE

Robinson alleges that his appointments and procedures were not scheduled as they should have been given his serious illness and his continued complaints.  (ECF No. 1 at PageID 13-20, 25-26, 34-40.)  The court reviews claims about the denial or delay of medical care under the Eighth Amendment, which prohibits cruel and unusual punishments.  *See generally Wilson v. Seiter*, 501

U.S. 294, 297 (1991).  Under *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment."  Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105.  To state a cognizable claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* at 106.

Eighth Amendment claims consist of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298.  The objective component of an Eighth Amendment claim based on a lack of medical care requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994).  "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" *Blackmore*, 390 F.3d at 897; *see also Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005).  Robinson satisfies the objective prong of an Eighth Amendment claim.

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that the official had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 302-03.  The plaintiff must show that the official acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997).  "[D]eliberate indifference describes a state of mind more

blameworthy than negligence." *Farmer*, 511 U.S. at 835. A prison official cannot be found liable under the Eighth Amendment unless that official subjectively knows of an excessive risk of harm to an inmate's health or safety and disregards that risk. *Id.* at 837. "[A]n official's failure to alleviate a significant risk that the official should have perceived but did not" does not amount to cruel and unusual punishment. *Id.* at 838. "Not 'every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim.'" *Sarah v. Thompson*, 109 F. App'x 770, 771 (6th Cir. 2004) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997)).

Robinson has adequately alleged facts from which it can be plausibly inferred that Robertson perceived and disregarded a substantial risk to Robinson when Robertson denied and delayed Robinson's medical care. As such, Robinson has satisfied the Eighth Amendment's subjective component. (ECF. No 1 at PageID 13-20, 25-26, 34-40.) Robinson alleges that he repeatedly requested medical care for a life-threatening condition. He alleges that Robertson's conduct and inaction were the product of her deliberate indifference to the serious harm Robinson would suffer. (ECF No. 1 at PageID 17-21, 25-26, 34-40.) Robinson also alleges that Robertson's failure to address Robinson's medical needs was retaliation for Robinson's filing grievances. *See Duncan v. Duckworth*, 644 F.2d 653 (7th Cir. 1981) (initial failure to properly diagnose prisoner's injury may be attributable to no more than error in judgment, which may or may not be actionable as negligence, but failure to promptly schedule surgery, once need for it was recognized and in face of prisoner's repeated complaint of severe pain, raised questions regarding prison hospital officials' concern for their patient).

Robinson has alleged that he was denied medical care and that Robertson's conduct and inaction were the product of her deliberate indifference to his substantial risk of serious harm.

(ECF No. 1 at PageID 17, 19-20.)  As an initial matter, Robinson's allegations in the Amended Complaint are sufficient to meet the threshold inquiry at screening to state a claim for denial or delay of medical care.  Robinson's claim for denial or delay of medical care SHALL PROCEED against Robertson in her individual capacity.

## IV.   MOTION REQUESTING APPROVAL OF SUBPOENA AND SUMMONS SERVICE

Robinson's Motion Requesting Approval of Subpoena and Summons Service (ECF No. 10) is GRANTED.

## V.   CONCLUSION

For the reasons explained above:

A.   The Motion to Amend (ECF No. 9) is GRANTED.  All Defendants except Robertson and her unknown insurance carrier are DISMISSED WITHOUT PREJUDICE.

B.   Robinson's claims against Robertson in her official capacity and against her unknown insurance carrier are DISMISSED WITH PREJUDICE.

C.   Robinson's federal claim of denial or delay of medical care and his state law claim of medical malpractice against Robertson in her individual capacity (ECF No. 1) SHALL PROCEED.  Robinson shall familiarize himself with the Federal Rules of Civil Procedure and this Court's Local Rules.[3] Robinson is reminded that he must promptly notify the Clerk, in writing, of any change of address or extended absence.

---

[3] A copy of the Local Rules may be obtained from the Clerk or on the Court's website at https://www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf.

Failure to comply with these requirements, or any other order of the Court, may result in the dismissal of this case without further notice.

D.   The Motion Requesting Approval of Subpoena and Summons Service (ECF No. 10) is GRANTED.

IT IS SO ORDERED, this <u>13th</u> day of September, 2024.

/s/ <i>Samuel H. Mays, Jr.</i>
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE
